SKINNER, Respondent, v. KERWIN ORNAMEN-
TAL GLASS COMPANY, Appellant.

**St. Louis Court of Appeals, December 15, 1903.**

1. **SALES: Implied Warranty.** Where one purchases apparatus
   for a particular object, which object is known to the seller,
   without any express warranty, an implied warranty will arise
   that the apparatus was reasonably fit for the uses for which it
   was intended.

2. ———: ———: **Evidence.** In an action for the price of cer-
   tain apparatus which the defendant claimed was purchased with
   an implied warranty and proved to be worthless for the pur-
   poses for which it was sold, it was competent for the defend-
   ant to show that he was ignorant of the kind of apparatus ap-
   propriate for the uses intended and relied upon the skill and
   experience of the plaintiff, and that the apparatus was worth-
   less either for the purpose for which it was ordered, or for
   any other purpose.

3. ———: ———: ———: **Expert Testimony.** It was also com-
   petent in such case for the defendant to show by expert testi-
   mony what would be suitable apparatus for the purpose in-
   tended and why the plaintiff's apparatus was unfit for such
   purpose.

4. ———: ———: **Instructions.** In an action for the price of
   certain apparatus which the defendant claimed was purchased
   with an implied warranty and proved to be worthless for the
   purpose for which it was sold, it was error to refuse an in-
   struction that if plaintiff sold the defendant the apparatus for
   a certain purpose which was known to the plaintiff when sell-
   ing the same, and that the said apparatus was worthless for
   that purpose and of no value for any other purpose, and if
   defendant refused to accept the same and notified plaintiff
   within a reasonable time after said apparatus was set up, to
   put the same in working order or remove it, then the verdict
   should be for the defendant.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse
A. McDonald*, Judge.

REVERSED AND REMANDED.

*Frank K. Ryan* for appellant.

(1)   The court erred in rejecting appellant's expert evidence tending to show (a) what would be a suitable exhaust apparatus for the purpose of removing dust from the appellant's sand-blast room; (b) the reasons why respondent's fan and piping were unfit for such purpose; and (c) the proper and usual construction of a fan, piping and apparatus for such purpose. Rogers on Expert Testimony, sec. 37; Lawson on Expert and Opinion Evidence (2 Ed.), p. 269; Barnes v. Heath, 58 N. H. 196; Lindley v. Railroad, 36 Minn. 539; Greenleaf v. Stockton C. Harvester & A. W., 78 Cal. 606; Grant v. Varney, 21 Col. 329; Gavesk v. Railroad, 49 Mo. 274; Williams v. Toauton, 125 Mass. 34; Eidt v. Cutter, 127 Mass. 522; Lincoln v. Tounton Copper Co., 9 Allen 181; Commonwealth v. Piper, 120 Mass. 185; Czeewzka v. Railroad, 121 Mo. 201; O'Mellia v. Railroad, 115 Mo. 205; Monahan v. K. C. C. & C. Co., 58 Mo. App. 68, 74; Dean v. McLean, 48 Vt. 412; Oties v. Cowles, 7 N. Y. Supp. 251; Linch v. Paris L. & G. E. Co., 80 Tex. 23; Lang v. Terry, 163 Mass. 138; Austin Rapid Transit Co. v. Grather (Tex. Civ. App.), 31 S. W. 197; Baltimore & Y. T. Road v. Leonhardt, 60 Md. 70; James v. Hodsden, 47 Vt. 127; Excelsior Electric Light Co. v. Sweet, 57 N. J. L. 224, 230.   (2)   The appellant is entitled to a new trial because of the refusal of this instruction: "If the jury believe from the evidence that the fan and piping sued for were sold by the plaintiff to the defendant for the purpose of exhausting or taking out dust from the sand-blast room of the defendant, and that such purpose was known to the plaintiff when selling same, and that said fan and piping were worthless for that purpose, and that said articles as placed upon and attached to defendant's premises by the plaintiff were and are of no value for any other purpose then your verdict will be for the defendant." St. Louis Brewing Assn. v. McEuror, 80 Mo. App. 429, 431;

Schomberg v. Loker, 88 Mo. App. 387, 391; Small v. Bartlett, 96 Mo. App. 550, 552; Danforth & Co. v. Crookshank, 68 Mo. App. 311, 317; New Birdsell Co. v. Keys (K. C. Ct. App.), 74 S. W. 12, 13.

*J. Carter Carstens* for respondent.

(1) The refusal of instructions is not ground for reversal, where those given correctly state the law, and fairly present the case. Brent v. Shelley, 5 Mo. App. 581; Doering v. Hornsby, 12 Mo. App. 571; Hamby v. Brasher, 51 Mo. 439; Porter v. Harrison, 52 Mo. 524; Meyers v. Railroad, 59 Mo. 223. (2) The refusal of a correct instruction does not warrant a reversal, when it appears that the complaining party was not in fact injured by the refusal. Frizelle v. Paint Company, 24 Mo. App. 529. (3) When the refusal of the correct instruction did not result in any harm to appellant, such refusal will be no ground for reversal. Prichard v. Hewitt, 91 Mo. 547; Cheek v. Waldron, 39 Mo. App. 21. (4) The Supreme Court will not reverse for refusal of instructions unless it appears that error has been committed materially affecting the merits of the action, citing sec. 2303, Revised Statutes 1889, now section 865, Revised Statutes 1899. Orth v. Dorschlein, 32 Mo. 366. (5) It is not reversible error to refuse instructions which are correct, but which are substantially covered by those given. Keystone v. Leonard, 40 Mo. App. 477; McClure v. Ritchie, 30 Mo. App. 445. (6) Although instructions refused assert correct principles, yet if the jury by their verdict have negatived the hypothesis of facts upon which they were based, the Supreme Court will not interfere with the judgment. Patterson v. McClanahan, 13 Mo. 507. (7) Whether any distinct assertion or affirmation of quality made by the owner during a negotiation for the sale of chattels which it may be supposed was intended to cause the sale, and was operative in making the sale, it would cause a warranty, and the question whether the particular affirmation will consti-

tute a warranty is one of fact for the jury.  Houghs v. Funston, 23 Iowa 257; Seitz v. Brewers Refrigerator Mach. Co., 141 U. S. 510; Lindsay v. Davis, 30 Mo. 406. (8) Where buyer has opportunity to inspect: While the fact that the buyer has had an opportunity to examine the goods sold, is not material where there is a specific warranty. It is a fact to be considered whether mere words of commendation used in the course of sale, constitute a warranty. It seems where abundant opportunity to examine the goods is afforded to the buyer, the maxim of *caveat emptor* applies, and he assumes all risk not covered by clear and express warranties. Vol. 28 (2 Ed.), Am. and Eng. Ency. of Law, p. 761. (9) A judgment will not be reversed on account of the exclusion of competent evidence, unless it appears that the rejected evidence might, and ought to have had some influence in finding a verdict.  Roussin v. Ins. Co., 15 Mo. 245. (10) The exclusion of competent evidence will not justify a reversal, if it already appears that the appellant was not prejudiced thereby.  Bar v. Armstrong, 56 Mo. 577-584; Spiva v. Min. Co., 88 Mo. 68-75; In re Bischoff & Stumpf, 10 Mo. App. 474; Brown v. Wright, 15 Mo. App. 406. (11) Where nothing is preserved by the record from which the appellate court can see whether the lower court erred or not, the judgment will be affirmed, for under such a state of the record the appellate tribunal must present that the trial court decided correctly until the contrary appears.  Mead v. Matson, 9 Mo. 782; Beckley v. Skroh, 19 Mo. App. 75. (12) Again, if a record is susceptible of two interpretations, that will be given it which will sustain the judgment of the lower court.  St. Louis Perp. Ins. Co. v. Cohen, 9 Mo. 421.

### STATEMENT.

This proceeding was begun by filing in the office of a justice of the peace of the city of St. Louis, the following complaint:

"Plaintiff states that the defendant is and was at the times herein mentioned, a corporation duly incorporated under the laws of this State.

"Plaintiff states that defendant is indebted to him in the sum of $145.00, as per written proposition submitted to defendant, to and for putting in a certain fan and piping selected by defendant from American Blower Catalogue (February 21, 1902).

"Plaintiff further states that there is a further charge of $7.00 for repairing said fan on March 7th, a total of $152.00.

"Plaintiff further states that he has completed said contract composed of said written proposition and order to do the work; that he has furnished the labor and material in accordance therewith, and that the defendant company has refused and failed to pay all or any part of the same."

The printed abridgment of the record displays the following history of the jury trial in the circuit court:

Plaintiff offered evidence tending to support the allegations of the petition, including evidence that plaintiff had made to defendant a proposition in writing, to furnish a fan with piping according to drawings, plans and specifications therefor, and as shown by the catalogue of the American Blower Company, both mentioned in the petition, for the price of $145, and without express warranty, and defendant instructed plaintiff to put such fan in its factory as proposed; that plaintiff furnished the fan and piping to defendant, and placed them in defendant's factory under the latter's direction, and in accordance with such plans and drawings, in skillful and workmanlike manner; that plaintiff later, at request of defendant, replaced a blade of the fan, the reasonable price of which would be $7.

Defendant introduced evidence tending to prove, that plaintiff was shown by its president its sandblast room, when it was filled with dust from the

workings of sand-blast machinery, and informed him that he wanted something to take out the dust in the room caused by said sand-blast machinery; that plaintiff was experienced in the business of furnishing such fans, piping and apparatus for exhaust purposes, for such purposes as removing dust, foul air, etc., from premises, and said that he would furnish a fan or blower with piping and attachments, that would exhaust or remove the dust from the room for the sum of $145, and defendant then accepted such offer; that the fan, piping and attachments installed were not reasonably fit for the purpose of defendant, and as soon as such apparatus was ready for operation, and within three or four days after using it, defendant notified plaintiff either to put it in working order or to remove it; that by error plaintiff had mailed and addressed to the Krenning Glass Company a proposal which, after above conversation between plaintiff and defendant's president, was received by defendant, to furnish a fan with attachments for the sum of $145, not containing any express warranty of the work to be done by such fan and attachments, and not stating the purpose for which the apparatus was intended; that plaintiff knew the purpose for which defendant intended to use the fan, piping and attachments, and defendant had no opportunity to test them before they were put in operation, and the fan, piping and attachments were worthless for defendant's purpose; defendant also offered to prove that these mechanical appliances, as then constructed and located upon defendant's premises, were worthless for any purpose whatever, which latter testimony was objected to by plaintiff, and excluded by the court. Defendant offered testimony tending to show, that when purchasing the fan, it was ignorant of the kind of apparatus proper to remove the dust from its sand-blast room, and had relied on the judgment and skill of the plaintiff, to furnish such apparatus or fan, piping and attachments, as would accomplish such purpose, but plaintiff's objection to this

testimony was sustained by the court.   Defendant also tendered the testimony of experts, to establish what would be a suitable exhaust apparatus for the purpose of removing dust from the defendant's sand-blast room, and to assign the reasons, why the plaintiff's fan and piping were unfit for such purpose, and to show the proper and usual construction of such fan, piping and apparatus therefor, all of which the court excluded upon plaintiff's objection; defendant further offered testimony that it did not request plaintiff to repair the fan, and the blade was broken while the fan was being tested.

The court, of its own motion, charged the jury as follows:

"That if they find from the evidence that plaintiff made a proposition in writing with plans and drawings, all as introduced in evidence, to the defendant to furnish a certain fan as shown by the American Blower Company's catalogue introduced in evidence, with piping therefor according to the terms of said proposition and plans and drawings, and to put the said fan up in defendant's factory according to said plans and drawings for the price and sum of $145, and without warranty of said fan, express or implied, as defined by other instructions herein given; and that defendant thereupon told plaintiff to put said fan in defendant's factory as proposed; and you further find that plaintiff furnished said fan and piping therefor to defendant and placed the same in defendant's factory under defendant's direction, and in accordance with such plans and drawings, in a skillful and workmanlike manner, you must find for the plaintiff on that part of his demand, in the sum of $145, together with interest thereon at the rate of six per cent per annum from the twenty-first day of March, 1902, the date of filing this suit."

And at the request of defendant, gave the following instruction:

"If the jury believe from the evidence that the plaintiff was shown by the president of the defendant its sand-blast room, when same was filled by dust from the workings of said blast machinery, and plaintiff was told by said president that he wanted something to take out the dust from said room raised by said sand-blast machinery, and that plaintiff said that he would furnish a fan or blower with piping and attachments that would exhaust or remove said dust, for the sum of $145, and that defendant was ignorant as to the kind of apparatus proper for such purpose, and relied on the skill and judgment of defendant as to same, and that defendant then and there accepted such offer, then there was an implied warranty that said articles were reasonably fit for said purpose, and if you further believe that said fan, piping and attachments as furnished by the plaintiff were not reasonably fit for the above purpose, and that defendant as soon as the apparatus was ready for operation, or three or four days after first using said fan apparatus, notified plaintiff to put same in working order or to remove it, then you will find for the defendant, although you should believe from the evidence that plaintiff mailed to the Krenning Glass Company by mistake a proposal addressed to said company, which was afterwards received by the defendant, to furnish a fan with attachments for the sum of $145 without containing any express warranty as to the work to be done by said fan and attachments, or without stating the purpose for which said apparatus was intended.

"If the jury believe from the evidence that the plaintiff examined the room of the defendant used for sand-blast machinery while same was being operated, and was then told by the representative of defendant that it wanted something that would take out from said room the dust caused by the operation of said machinery, and that plaintiff said that he would furnish a fan with attachments that would do so for $145, and that the

defendant was without skill in regard to such a matter, but relied upon the experience and judgment of plaintiff, and that such offer was then accepted by the defendant, then there was an implied warranty on the part of the plaintiff that said apparatus should be reasonably fit for the aforesaid purpose, and if you further believe that such apparatus, or fan with attachments, when furnished were not reasonably fit for such purpose, and that as soon as defendant had an opportunity to test said apparatus, or within three or four days thereafter, it notified plaintiff to make said apparatus so that it would take out said dust or remove said apparatus from said premises, and that same was subject to plaintiff's order, and that plaintiff failed to pay any attention to said notice, then your verdict will be for the defendant, although the written proposal furnished by the plaintiff to defendant does not state the purpose for which said fan and attachments were intended, or contain any express warranty in regard thereto.

"If the jury believe from the evidence that the plaintiff was a manufacturer or dealer in exhaust and blow-piping and that he agreed to furnish and set up in the sand-blast room of the defendant a blower or fan with piping and attachments to be applied for exhausting dust therefrom, and that plaintiff knew the defendant wanted same for the said purpose, and that the defendant had no opportunity to test said fan, piping and attachments or apparatus before same was put in operation, and that the defendant was inexperienced in regard to such apparatus, and relied upon the plaintiff's judgment in regard to same, then there is an implied warranty that said fan, piping and attachments or apparatus shall be reasonably fit for the aforesaid purpose, and your verdict will be for the defendant if you believe and find from the evidence that said apparatus was not so fit, if it further appears that as soon as defendant had an opportunity to test said apparatus, or within three or four days thereafter it notified the plain-

tiff to put said apparatus in working order, or to remove same from defendant's premises.''

The jury found a verdict for plaintiff for $152, and defendant appealed.

REYBURN, J. (after stating the facts as above).— 1. If appellant purchased the fan by selecting it from the catalogue exhibited to him, without relying on the judgment of respondent, and the latter furnished the article designated, then manifestly there was no room for any implied warranty, but from the proof introduced and tendered by appellant, the contract of sale imported a warranty by legal implication, that the fan and appurtenances would be fitted for the use, for which they were required and applied, and would perform the work, for which they were designed, of expelling the dust, caused by the sand-blast machinery, from that portion of defendant's premises, in which such machinery was located. ''The adaptation of a machine to the uses for which it was made is always warranted.'' Comings v. Leedy, 114 Mo. 454; Smith v. Hightower, 76 Ga. 629. Without any express agreement, but from the fact that the apparatus was ordered by defendant for a particular object known to plaintiff, an implied warranty would arise that it would be reasonably fit for the uses for which it was intended, and would accomplish the purpose for which it was sold. ''The principle is elemental that, when a dealer contracts to supply an article in which he deals, to be applied to a particular purpose so that the buyer necessarily trusts to the judgment of the dealer, there is, in that case, an implied term of warranty that it shall be reasonably fit for the purpose to which it is to be applied.'' Armstrong v. Tobacco Co., 41 Mo. App. 254; St. Louis Brewing Assn. v. McEnroe, 80 Mo. App. 429; Creasy v. Gray, 88 Mo. App. 454. This, the theory of the defense, appears to have met partial recognition in the instructions given to the jury, but was discarded in the admission of testimony. This

proposition is interwoven in the first, second and third instructions given at instance of defendant, but the defendant was entitled to show that in the purchase of the fan and its equipment, it was in ignorance of the kind of apparatus appropriate for the uses intended, and that it relied upon the expert skill, experience and judgment of plaintiff, to furnish such machinery as would attain the purpose sought. Benjamin, Sales (6 Ed.), sec. 16, p. 644. The testimony tendered by defendant was competent and proper for such purpose and should have been admitted.

2. The instructions asked by defendant and refused by the court were as follows:

"If the jury believe from the evidence that the fan and piping sued for were sold by the plaintiff to the defendant for the purpose of exhausting or taking out dust from the sand-blast room of the defendant, and that such purpose was known to the plaintiff when selling same, and that said fan and piping were worthless for that purpose, and that said articles as placed upon and attached to defendant's premises by the plaintiff were and are of no value for any other purpose, then your verdict herein will be for the defendant.

"If the jury believe from the evidence that the fan and other articles sued for were sold as an apparatus by the plaintiff to the defendant to be set up on defendant's premises for the purpose of exhausting or taking out dust from the sand-blast room of the defendant, and that such purpose was known to the plaintiff when selling same, and that the plaintiff failed to set up on said premises, and deliver to the defendant a fan and other articles or apparatus suitable for the above purpose, then the defendant was not bound to accept the fan and other articles or apparatus set up and tendered, and, if the defendant did refuse to accept same, as not being of such description, and notified the plaintiff within a reasonable time after said apparatus was set up and tendered, to put said fan and piping or apparatus in work-

ing order or remove same, then the plaintiff can not recover.

"The court instructs the jury that if it appears from the evidence that the defendant as soon as it had an opportunity to test plaintiff's fan and piping or apparatus, or within one or two days thereafter, notified plaintiff to put it in working order or remove same, then such notice must be taken to have been given within a reasonable time, and as meeting all the requirements of this case in regard to notice on part of defendant that it rejected plaintiff's fan and piping under the circumstances mentioned in the other instructions herein."

If, after a reasonable opportunity to test them, the fan and appurtenances were found to be worthless, either for the purpose for which they were ordered by defendant, or for any other purpose, the consideration for their purchase wholly failed, and defendant's testimony tending to show such fact was competent, and the first and second of above instructions predicated thereon would have correctly announced the law, and should have been given, if they had further required the finding that defendant relied on plaintiff's judgment in furnishing a fan, instead of one of its own selection, but in the form asked were in that regard defective. Comings v. Leedy, supra; St. Louis Brewing Assn. v. McEnroe, supra; Smith v. Bartlett, 96 Mo. App. 550; McCormick, etc., Co. v. Brady, 67 Mo. App. 292; Schoenberg v. Loker, 88 Mo. App. 387; Danforth v. Crookshanks, 62 Mo. App. 311.

3. The expert testimony of defendant, offered to show what would be a suitable apparatus to exclude dust from the defendant's sand-blast room, and explanatory of the infirmities in the machinery furnished by plaintiff, should have been received. It was competent to show by proper testimony that the appliances supplied were defective, and insufficient for the intended purpose, and what character of apparatus would have relieved the condition sought to be remedied. As the matter in-

volved questions not within the common experience, and the ordinary information of men in general, but which belonged rather to the domain of scientific knowledge, it was proper that the jury should have the benefit of witnesses possessing peculiar skill or information in that department of mechanical research and proficiency to which the questions related.   Rogers on Expert Testimony (2 Ed.), p. 21; Monahan v. Coal Co., 58 Mo. App. 68; Gavisk v. Railroad, 49 Mo. 274.   This testimony was also competent as tending to show that the fan was worthless for any purpose, and upon the theory of the defense sought to be established, that it relied upon the plaintiff to furnish a suitable fan, such testimony was admissible as tending to prove that it was unsuitable for the purpose for which it was bought.   The judgment is therefore reversed and the cause remanded. *Bland, P. J.,* and *Goode, J.,* concur.