THE OFFICIAL CATALOGUE COMPANY, Appellant, v. AMERICAN CAR AND FOUNDRY COMPANY, Respondent.

St. Louis Court of Appeals, October 30, 1906.

CONTRACTS: Rescission: Action for Breach. One party to an executory contract has the power to repudiate it, and the remedy of the other party, injured thereby, is an action for damages caused by the breach of the contract; he can not thereafter himself perform and recover on the contract, nor in an action on the contract recover damages caused by the breach.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

*H. A.* and *G. R. Hamilton* for appellant.

(1) A valid contract is formed, when a proposition made by one party, is accepted by the other to whom it is made. Neither party can withdraw from such a contract without subjecting himself to liability for the damage caused by the breach of contract. Lungstrass v. Ins. Co., 48 Mo. 201; Lungstrass v. Ins. Co., 57 Mo. 108; Lewis v. Ins. Co., 61 Mo. 534; Lapsley v. Howard, 119 Mo. 489; Stone v. Pennock, 31 Mo. App. 544; Brown v. Smith, 113 Mo. App. 59. (2) Plaintiff's action is based on the contract and the evidence establishes a

compliance by plaintiff with the terms thereof and a breach of said contract by defendant. The performance by plaintiff after defendant refused to perform, does not deprive plaintiff of its right to recover whatever damage it suffered; nor does it change the nature of its cause of action. Pub. and Eng. Co. v. Walker, 87 Mo. App. 503; Peck v. Metal R. & C. Co., 96 Mo. App. 212.

*McKeighan & Watts* for respondent.

The first count of plaintiff's petition, which is the only one in controversy in this appeal, is a suit for recovery of the price alleged to have been agreed upon between plaintiff and defendant, through their respective agents, for two pages of advertisement as per the order, such price being based, according to the first count of plaintiff's petition, upon full performance by it, the plaintiff, of the contract. The evidence, however, showed that before the plaintiff published its supplementary catalogue, and before it inserted the defendant's card (in lieu of copy of advertising matter), it was notified by defendant of cancellation of the order, with request that the same be not published. Under such circumstances the plaintiff was not entitled to recover the price agreed upon, as and for a full performance of the contract, but is only entitled to recover damages for non-performance, caused by a breach of the contract by the defendant, according to the evidence as it stood at the close of plaintiff's case. Pub. and Eng. Co. v. Walker, 87 Mo. App. 503; Peck & Co. v. Roofing & Corrugating Co., 96 Mo. App. 212; Cole v. Armour, 154 Mo. 333 (l. c. 350) ; Davis v. Bronson, 33 Am. St. Rep. 783 (N. D.) ; 33 Am. St. Rep. p. 791, note; Danforth v. Walker, 37 Vt. 239; Fireworks Co. v. Polites, 130 Pa. St. 536.

BLAND, P. J.—During the Louisiana Purchase Exposition period (1904), plaintiff, a corporation, had a concession granting it the right to publish and sell the "Official Catalogue of Exhibits," consisting of books containing a classified enumeration of the various displays on exhibition at said exposition, together with line and display advertising of said exhibitors, as contracted for. The defendant is also a corporation doing business in the city of St. Louis, Missouri. On March 5, 1904, J. F. Hilton, plaintiff's solicitor, secured the following order from defendant:

"The Official Catalogue Company:—

"This is your authority for inserting two pages of advertising in the supplementary catalogues of the Universal Exposition to be held in St. Louis, in 1904, for the following departments: Transportation, a total of two pages in one Department Catalogues, copy for which is hereto attached and for which we have accepted the attached draft for $400, the full amount of this contract, payment of draft to be a final release of all obligations under this contract. This contract must be returned with draft.

"Only the conditions stipulated on the contract will be recognized by the publisher. In case we neglect to furnish copy in time, you may use our business card.

"Contract secured by

"J. F. HILTON, Agent.

"AMERICAN CAR AND FOUNDRY CO.

By Jos. H. AMES, Asst. to G. M."

A draft for four hundred dollars was attached to this order but it was not accepted or signed by defendant. On April 1, 1904, plaintiff, by letter, asked defendant to furnish matter for two pages of advertising matter to be inserted in the official catalogue. Answering this inquiry, on April 6, defendant wrote:

"We have decided not to make use of the special catalogue for the Transportation Department, and as explained to Mr. J. F. Hilton, with whom the arrangement was originally discussed, we wish to cancel the conditional order given for two pages in this catalogue.

"Will you kindly acknowledge receipt hereof promptly, advising that you have cancelled our order and that the matter is now fully understood.

"Yours truly,

"Jos. H. Ames, Asst. to G. M."

In answer to another request for matter to fill the two pages of space contracted for, defendant, on April nineteenth, addressed the following letter to plaintiff:

"Dear Sir:

"In reply to your letter of April 16th, I beg to say that we cannot comply with your request for copy of two pages of advertising, as, in accordance with our previous correspondence, we instructed you to cancel the conditional order given Mr. Hilton, and do not accept the reasons given in your letter of April 7th as sufficient for your not doing so. You certainly have not commenced printing and binding the catalogue and we have nothing to do with your arrangement for commissions.

"I hope to receive advice by return mail that you have cancelled our order in accordance with our instructions.

"Yours truly,

"Jos. H. Ames,

"Ass't to G. M."

Both of these letters were received by plaintiff. Some further correspondence was had between the parties, by which it appears that defendant insisted the contract was a conditional one and was not to become final until approved by the president and, in any event, it had cancelled the contract by its letter of April sixth. De-

fendant refused to furnish any advertising matter. Plaintiff, nevertheless, published defendant's business card, gotten up by itself, in its catalogue, in large display type. On one page was the following:

"AMERICAN CAR AND FOUNDRY CO.

*St. Louis, U. S. A.*

Exhibit in

PALACE OF TRANSPORTATION."

And on the other the following:

"AMERICAN CAR AND FOUNDRY CO.

*St. Louis, U. S. A.*

Exhibit in

PALACE OF TRANSPORTATION."

Plaintiff's evidence tends to prove that, prior to the reception of defendant's letter of April sixth, it had laid out its catalogue and set up in form the defendant's business cards "in dummy," as plaintiff terms it, intending to take out "the dummy" and insert such advertising matter as defendant might furnish.

The suit is bottomed on the contract. The breach alleged is failure of defendant to pay the contract price of four hundred dollars. At the close of plaintiff's evidence, the court instructed the jury that plaintiff could not recover, whereupon it took a nonsuit with leave. Plaintiff's motion to set aside the nonsuit and for new trial proving of no avail, it perfected its appeal to this court.

Mr. Bishop says, "the proposition is sound in principle, and sufficiently supported by authority, — though more or less may be found in the books against it, — that one party alone, with no consent from the other,

who is in no fault, has, at law, the power — not to be exercised without liability for damages, but still the power —to rescind any executory contract." [Bishop on Contracts, sec. 837.] Further on, at section 841, the learned author says: "A party who receives from the other a notice of rescission is, while entitled to damages should it proceed from the other's mere pleasure or necessities, still not justifiable in allowing anything further to be done to bring needless expense. He is even to take affirmative action, of the interests growing out of the rescinded contract required."

In Danforth v. Walker, 37 Vt. l. c. 244, the court said: "While a contract is executory, a party has the power to stop the performance on the other side, by an explicit direction to that effect, by subjecting himself to such damages as will compensate the other party for being stopped in the performance on his part at any point or stage in the execution of the contract. The party thus forbidden cannot afterwards go on and thereby increase the damages of the other party."

In Davis v. Bronson, 2 North Dakota 300, s. c., 33 Am. St. Rep. 783, it was ruled:

"A contracting party who has certain things to do under his contract, has no right to proceed to execute it after he has been notified that the other party to the contract will not stand by his compact; and the mere fact that the contract has been made with several joint contractors, while the refusal to perform has emanated from only one of them, does not not affect the operation of the rule. Hence, when one has agreed to erect a building for two persons who have bound themselves jointly to pay a certain sum for the work, but before entering upon the performance of the work, is notified by one of those persons that he will not carry out his part of the contract, the allowable and only proper course is to treat the contract as broken by both the joint contractors and sue for damages. The party who has contracted to erect the building cannot, under such

circumstances, go on and complete it, and recover the contract price." The action was on the contract to recover the contract price and not for damages for breach of it. This was held to be vital error.

In Unexcelled Fireworks Co. v. Polites, 130 Pa. St. 536, the defendant had ordered certain fireworks from plaintiff. Before they were separated from the bulk, defendant countermanded the order and notified plaintiff not to ship the goods. Plaintiff replied that, nevertheless, the goods would be shipped at the stipulated time and this was accordingly done. Defendant declined to receive them. It was held that the direction not to ship the goods was a cancellation of the order and a revocation of the carrier's agency to receive them, and the delivery to the carrier unauthorized under these circumstances. It was also held that plaintiff's true and only remedy was an action for special damages for refusing to receive the goods and no action could be maintained for the price.

In Dillon v. Anderson, 43 N. Y. 231, plaintiff contracted to make two boilers for defendant's steamship. Soon after the performance of the contract was begun, defendant notified plaintiff to stop the work. In spite of the notice, plaintiff continued work on the boilers, and in his action for damages claimed an allowance for wastage of materials, which wastage would not have oc-curred if the work had not been continued after the notice to stop had been received. The court held that the plaintiff had no right, after receiving the notice to work upon the boilers to the damage of the defendant.

In American Pub. and Engr. Co. v. Walker, 87 Mo. App. 503, defendant authorized the plaintiff in writing to furnish for his exclusive use cuts and reading matter weekly for one year and thereafter, until notified in writing to discontinue same, for which he agreed to pay seventy-five cents and postage for each cut, and twenty-five cents for each duplicate at the end of each month. The order was accepted by the plaintiff. The cuts and

reading matter were forwarded to defendant for several months, and until May 14, 1898, when defendant directed that no more be sent because he could not make arrangements with his home papers to use them. Notwithstanding this instruction, plaintiff continued sending them until the end of the year, but defendant refused to receive them. The plaintiff sued to recover the full contract price of the cuts forwarded after notice to ship no more. Judge GOODE, for the court, at page 310, said:

"It does not follow, however, that the plaintiff is entitled to recover the full price of the advertising matter sent after it was notified to stop sending it. On the defendant's refusal to accept any more cuts, it should have forborne to ship them. Under such circumstances the party notified has no right to continue to perform the contract and thus enhance the damages. The measure of the plaintiff's recovery is the profit it should have realized had it been permitted to continue to furnish the cuts to the end of the year. [7 Am. and Eng. Ency. of Law (2 Ed.), 153; Moline Scale Co. v. Bend, 52 Ia. 307; Danforth v. Walker, 37 Vt. 239; Ward v. Thomas, 64 N. Y. 107; McGregor v. Ross, 96 Mich. 103; Collins v. Delaport, 115 Mass. 159.]"

In Peck & Co. v. Roofing and Corrugating Co., 96 Mo. App. 212, the defendant agreed to advertise in plaintiff's journal for a stipulated time for a given amount and to furnish the necessary matter, cuts, etc. Defendant repudiated the contract and refused to furnish the necessary matter and cuts. The plaintiff furnished the matter and cuts and carried the advertisement for the stipulated time and sued for the contract price. The Kansas City Court of Appeals held plaintiff had no power to furnish the matter and so perform the contract; that the failure of the defendant to furnish the matter, etc., was a breach of the contract which the defendant had a right to do on the usual terms of compensating the plaintiff for its damages.

It is settled law in this State that either party to a contract has the right to repudiate the contract on the usual terms of compensating the other for the damages, and that a repudiation of the contract amounts to a breach. When defendant repudiated the contract on April sixth, the contract was breached and a right of action then accrued to the plaintiff to sue for and recover damages caused by the breach. It was not within plaintiff's power thereafter to publish the advertisement in its catalogue and sue upon the contract as for a performance and recover the contract price. Plaintiff's remedy, having expended labor and incurred expense in a part performance of the contract before its repudiation was by suit to recover the money expended, the value of the labor bestowed in part performance of the contract, plus the profit that would have accrued had not the performance of the contract been prevented by the defendant. The contract sued on is unlike a contract for personal services for a definite period. In the latter class of contracts, where the employee is wrongfully prevented from performing his contract by his employer, the employee may hold himself ready and willing to perform his part of the contract and so notify his employer. The law deems his readiness and willingness to perform the contract as equivalent to performance, and he may at the end of the contract period sue on the contract for the contract price which, however, may be offset by such sums as the employee has earned in other service or which he could have earned by accepting an offer of employment within the line of his occupation. [Pond v. Wyman, 15 Mo. 176.] This is a just and equitable rule as applied to breaches of contract for personal service but for obvious reasons should not be applied to contracts, which the complaining party had no power to perform after its repudiation by the other party, and where all the damages caused by the breach accrued at the happening of the breach. The suit being on the con-

tract to recover the contract price, neither evidence of the amount expended in part performance of the contract nor evidence of the profit plaintiff would have made on a full performance of the contract was admissible or recoverable in the suit as brought. [Cole v. Armour, 154 Mo. 333, 55 S. W. 476.]

The judgment is affirmed. All concur.