THE KENYON PRINTING AND MANUFACTUR-
ING COMPANY, Respondent, v. BARNSLEY
BROTHERS CUTLERY COMPANY, Appellant.

Springfield Court of Appeals, April 4, 1910.

1. **CONTRACTS: Construction: Sales: Cancellation of Order.**
Defendant ordered in writing of the plaintiff a number of maps
of the United States for advertising purposes. Upon examining
the sample subsequently left with him by plaintiff's agent, de-
fendant discovered that the maps were out of date. A letter was
written to plaintiff cancelling the order, which letter plaintiff
received within two days after work had begun on the maps.
*Held*, that had the maps been up to date plaintiff could not have
recovered for work done on the order subsequent to its cancel-
lation—his remedy being for breach of contract; but, as a fair
interpretation of the order required plaintiff to furnish up to
date maps he was not entitled to recover at all.

2. ————: ————. In construing contracts, the surrounding cir-
cumstances should be taken into consideration.

3. ————: **Executory Contracts: Repudiation: Remedy.** One
party to an executory contract has the power to repudiate it,
and the remedy of the other party is an action for damages
caused by breach of contract; and a contract party who has cer-
tain things to do under his contract has no right to proceed to
execute it, after he has been notified that the other party will
not stand by the contract.

4. ————: **Sales: Implied Warranty: Sale of Maps for Advertis-
ing Purposes.** In a sale of maps for advertising purposes, there
is an implied warranty that they shall be reasonably up to date,
and fit for the purposes for which they were sold.

5. ————: ————: **Inspection of Sample.** Where a party makes
an order for maps for advertising purposes and, subsequently,
a sample map is submitted to him and he finds that it is out of
date and useless for the purpose for which it was sold, he has
a right to rescind the contract.

Appeal from Barry Circuit Court.—*Hon. F. C. John-
ston,* Judge.

REVERSED.

*D. H. Kemp* for appellant.

*A. M. Peel* and *R. H. Davis* for respondent.

GRAY, J.—The date and place of birth of this cause was August, 1907, in the circuit court of Barry county. The plaintiff is an Iowa corporation, and the defendant a Missouri corporation.

On the 5th day of February, 1907, a traveling salesman or solicitor for the plaintiff called at the office of the defendant in Monett, and procured an order as follows:

"507-509 Locust Street, Des Moines, Iowa,
"Feby. 5, 1907.

*"The Kenyon Printing & Mfg. Co.*
"Please ship us by Freight
"To Barnsley Bros. Cutlery Co.
"Shall we show Proof? yes Monett, Mo.
"Date to Ship: Mch. 15, 1907.
"As this is contract work, we agree that this order is not subject to cancellation, and that all agreements relative to this order are stated herein.

"Article                    Price
"500 National U. S. Map Hangers
"without Calendars, Blue Border
"500 Panama Map Hangers,
"without Calendars, Blue Border
"500 Tubes with labels attached.
                    "Yours truly,
                "Barnsley Bros.' Cutlery Co.
"S. Greenbaum,           Per U. S. Barnsley,
    "Salesman.                    Customer."

The petition alleged the making of the order, and when the same was received, plaintiff accepted and proceeded to manufacture and prepare for the defendant the articles named in the order, and that during the manufacturing thereof, defendant refused to accept and

pay for the same, and alleged damages in the sum of $67.50.

The answer admitted the making of the order, but stated that at the time the same was given, plaintiff's solicitor represented that the maps were already printed and kept in stock by plaintiff, and that each of said maps was in every respect up to date, and showed all the States, railroads, cities and towns; that defendant, relying on the representations, gave the order, but that the representations were untrue, and on the 12th day of February, 1907, and before it had sent to plaintiff any business card or advertisements to be lithographed by plaintiff on the maps, defendant ascertained that the maps were not up to date, but were old and out of date, and copied and printed from an old plate, and did not show the lines of railroads nor towns or cities, and did not even show the city of Monett, the home town of the defendant, although it was incorporated in 1888 and had a population of five thousand inhabitants; that upon obtaining said information, defendant immediately notified plaintiff of such facts, and that it declined the order and refused to send any business cards.

The testimony shows the purpose of the defendant in making the order was to procure the maps for advertising purposes. It stands admitted that the order was received on the 8th of February, and that on the 10th of February, plaintiff claims it commenced to fill the same. On February 12, 1907, the defendant wrote, and plaintiff received, the following letter:

"MONETT, MO., Feb. 12, 1907.

"*The Kenyon Printing Co., Des Moines, Ia.*

"Gentlemen: On looking over the sample map left by your salesman we find that it is a very old plate, so old in fact that it gives a little crossroads store near Monett and does not mention nor show our own town of over 6000 inhabitants.

"It would simply be a 'Joner' to us to send out a map without at least showing our own city. We find that railroads that were built near here years and years ago are not shown. In fact it is not what it was repsented to be and must decline to stand by the order.

"We like this scheme very much if the maps were only half-way up to date and presentable.

"Very truly,

"BARNSLEY BROS. CUTLERY CO.

"Per U. S. Barnsley, Secy."

The plaintiff claims it did not consider defendant's letter of the 12th as rescinding or cancelling the order. The plaintiff answered the letter of February 12, but the copy of the letter is not in evidence, but it is claimed that it contained an offer to insert on the map the name "Monett," and later the plaintiff wrote to defendant asking for copy of defendant's advertisements to be placed on the maps. February 27, the defendant answered the letter calling plaintiff's attention to the fact that it had cancelled the order on February 12, for the reasons then given, and that an answer had been received from that letter stating that plaintiff would dot "Monett" on the maps with red ink, if defendant wished, and that defendant had not authorized or agreed to accept a map in that condition, as it would still be far from up to date.

The court excluded all the evidence offered by the defendant tending to prove that its purpose in ordering the map hangers was to put its advertisements on the maps, and after the business advertisement or card had been lithographed or printed on the maps, they were to be sent out to the customers free of charge. The court also excluded all evidence offered by the defendant to show that the maps were old and not up to date; that they did not show the town of Monett, or any of its railroads, although the city had been incorporated in 1888.

The court excluded this testimony on the theory that the written order contained the full contract. At the request of the plaintiff, the court instructed the jury to find the issues for the plaintiff in a sum not exceeding $67.50, and to allow such sums as the evidence showed plaintiff paid out as expenses to its agents in securing the contract sued on, and such sum as the evidence showed was the value of the labor and material used in preparing the maps contracted for.

The jury returned a verdict in favor of the plaintiff for $67.50, and from that judgment, defendant appealed.

One party to an executory contract has the power to repudiate it, and the remedy of the other party is an action for damages caused by the breach of the contract. He cannot thereafter himself perform and recover on the contract. And a contracting party who has certain things to do under his contract, has no right to proceed to execute it after he has been notified that the other party will not stand by the contract, and when he receives notice from the other party repudiating the contract, he is not justified in allowing anything further to be done. [Catalogue Co. v. Car & Foundry Co., 120 Mo. App. 575, 97 S. W. 231; Frederick v. Willoughby, 136 Mo. App. 244, 116 S. W. 1109.]

The letter of February 12, expressly notified the plaintiff that defendant declined to stand by the order. This was a repudiation of the contract by the defendant, and the action of the court in permitting plaintiff to recover for all work performed up to February 27, cannot be upheld.

In construing contracts, the surrounding circumstances must be taken into consideration. In this case the defendant wanted some United States maps and other maps, upon which its advertisements were to be printed, and then sent out to its customers in advertisement of its business. The defendant was engaged in business at that time in the city of Monett, a thriving,

growing railroad city of five thousand inhabitants. It was the division point of a great railroad system, and one of the main gateways to the new and growing southwestern portion of the United States; and notwithstanding it was incorporated in 1888, the map which plaintiff proposed to furnish defendant did not show that city.

If not a word had been said as to what the map should contain, the simple statement that it was to be a map of the United States to be sent out by the defendant in advertising its business, implied that it was to be a reasonably up to date map. The maps being sold for a certain purpose, there was an implied warranty that they were fit for that purpose. [New Birdsall Co. v. Keys, 99 Mo. App. 458, 74 S. W. 12; Skinner v. Kerwin Orn. Glass Co., 103 Mo. App. 650, 77 S. W. 1011.]

The evidence shows that at the time the order was given the salesman did not have the map, but he subsequently procured one and left it with the defendant, and when the latter examined it, it was discovered that it was an old map and practically useless. The defendant then did what it had the right to do, notified the plaintiff that it would not accept the order. [St. Louis Brewing Association v. McEnroe, 80 Mo. App. 429.]

The court tried the case on the theory that because the order was in writing and called for maps, that the plaintiff had a right to furnish any map of the United States, no matter how incomplete or out of date. This is not a fair interpretation of the contract, and does not accord with reason. Although the contract was accepted by the defendant, yet, if after it had so signed the order, the traveling salesman presented to defendant a copy of the map and it was shown upon inspection that it was not as represented, the defendant had the right to rescind the contract. [Edwards v. Noel, 88 Mo. App. 434.]

From the letters and admissions of the parties, it may be taken as a fact that the map proposed to be furnished defendant under the order, did not contain

the name of the defendant's city and plaintiff proposed to dot it on the maps with red ink. The defendant did not have to accept a map so marked, and even if that had been done, it did not correctly show the railroads and other things which had a tendency to advertise that city.

The order signed by defendant and accepted by plaintiff when given a fair interpretation, required plaintiff to furnish an up to date map. The testimony of plaintiff shows it did not intend to furnish such a map, and unless it intended in good faith to fairly comply with the terms of the contract, it could not complain that defendant, upon discovering that fact, rescinded the contract. In this condition of the testimony, it is clear that in no event can the plaintiff recover, and hence the defendant's demurrer to plaintiff's testimony should have been sustained, and for this error, the judgment will be reversed without remanding. All concur.