REGISTER CO. v. HILL.

(Filed October 18, 1904).

1. SALES—*Pleadings—Contracts.*

In this action, for the price of a machine, a request "to hold the order until the plaintiff heard from the defendants further," to which plaintiff replied that it would hold up the order for a period, does not constitute a countermand.

2. SALES—*Contracts—Actions.*

Where the defendants ordered from plaintiff a cash register, agreeing "in consideration" of shipment to pay in monthly installments, title remaining in plaintiff until all the installments should be paid, plaintiff was entitled, on refusal of defendants to accept the machine when tendered, to maintain an action for the price, and was not limited to damages for breach of the contract.

ACTION by the National Cash Register Company against K. P. Hill and others, heard by *Judge Frederick Moore* and a jury, at January Term, 1904, of the Superior Court of FRANKLIN County. From a judgment for the plaintiff the defendants appealed.

*F. S. Spruill* and *Hinsdale & Hinsdale,* for the plaintiff.
*W. H. Yarborough, Jr.,* and *T. W. Bickett,* for the defendants.

CONNOR, J. The plaintiff is a corporation engaged in manufacturing and selling, upon order, cash registers. On September 19, 1901, the defendants signed and delivered to plaintiff's agent, J. E. O'Donnell, an order bearing date October 1 for a cash register to be "shipped as soon as possible." Defendants, in said order, promised to pay for said machine $420, of which $50 was to be paid on delivery and the balance in monthly installments of $30 each. Among other

provisions in the order was the following: "It is agreed that the title to the said cash register shall not pass until the purchase price or any judgment for the same is paid in full and shall remain your property until that time." The machine was shipped to defendants at Louisburg, January 11, 1902, and defendants duly notified thereof by plaintiff. Defendants refused to take it from the depot, to make the cash payment or execute the notes according to the terms of the order. The order further provides: "On presentation should there be any failure to pay such draft or execute notes for deferred payments, it is agreed that the full amount of the purchase price shall at once become due and payable. Should there be any default in the payment of any notes it is agreed that all the remaining notes shall at once become due and payable, anything in the notes to the contrary notwithstanding." The plaintiff on the 29th day of September, 1902, instituted this action for the recovery of the purchase price of the machine. The defendants in their answer deny that they purchased the machine, or promised to pay $420 therefor. They admit that they have never paid anything for the machine nor executed any notes therefor. They deny that the machine was delivered to them; they say, however, that at the time the order for the machine was given that it was distinctly agreed between O'Donnell, plaintiff's agent, and themselves that it was not to be sent in or become binding until confirmed by them after they had decided as to the business in which they would engage. That they never confirmed said order or instructed the agent to send it to the plaintiff. That this was acknowledged by said agent after said order was given. That they never went in the business in which said machine would have been useful or serviceable to them. That when the machine was shipped they immediately declined to receive it and notified the plaintiff. The defendants tendered the following issues: 1. "Did J. E. O'Donnell agree with the de-

fendants not to send in the order signed by the defendants until he should be instructed by them to do so?" 2. "Did the defendants instruct O'Donnell to send in said order?" 3. "What damages, if any, is the plaintiff entitled to recover?" The Court declined to submit the issues tendered, and in lieu thereof submitted the following: 1. "Did the the defendants contract and agree to buy from the plaintiff a national cash register?" 2. "What price did they agree to pay therefor?" 3. "How much is still due thereon?" To the refusal of the Court to submit the issues tendered by the defendants, and to the issues submitted by the Court, the defendants excepted. It was admitted that the machine was at the time of the trial in depot at Louisburg.

The plaintiff introduced the order and other testimony tending to show the circumstances under which it was given, and to contradict defendants' averment that there were any conditions attached thereto. The defendants introduced testimony tending to sustain their allegations. The only correspondence introduced was a letter to the plaintiff from its agent dated September 20th, enclosing the order, with the statement that the manufacture of the machine was not to be begun until October 1, 1901. Letter, October 8th, from plaintiff to defendants acknowledging receipt of order. Letter, October 10th, from defendants to plaintiff asking it to hold the order, saying that they contemplated some change in their business. Letter from plaintiff to defendants acknowledging receipt and saying that they would hold order "for a period;" that the machine was near completion. His Honor, among other things, charged the jury: "If you shall find from the evidence that at the time the order was signed by K. P. Hill & Co., it was delivered to J. E. O'Donnell with the understanding and agreement that the same was not to be sent in to the plaintiff company until he, O'Donnell, had been instructed by K. P. Hill & Co. to send it in; and if

you shall also find from the evidence that the defendants did not thereafter instruct said O'Donnell to send in said order, then the Court charges you that there was no contract or agreement for the purchase of a national cash register by the defendants, and you will answer this issue 'No.' " The evidence bearing upon this issue was then read over and reviewed by the Court, and the various contentions of the parties repeated to the jury. The Court set out in its charge all of the respective contentions of the plaintiff and of the defendants, and directed attention of the jury to the testimony offered by both sides in support of such contention. The defendants made no request for special instructions. To the defendants' exceptions to the refusal of his Honor to submit the first and second issues tendered, it is sufficient to say that the charge of the Court removed any possible objection if there was any. The real controversy was whether there was an unconditional order. The charge presents that question fairly and clearly and the jury found for the plaintiff. The exceptions cannot be sustained. The defendants, however, insist that the contract was executory—that, as found by the jury, they contracted and agreed to buy the machine; that they did not buy the machine; that at the time the order was given the plaintiff had no such machine to sell. They also insist that the order was countermanded before the machine was made; that this being so, the plaintiff should not have completed it but sued for damages for breach of contract, relying upon the decision of this Court in *Heiser v. Mears,* 120 N. C., 443. We do not deem it necessary to discuss the question because the defendants have not, either by their answer or by the issues tendered, presented it. The answer is based upon the contention that the order was conditional, and that the condition had never been performed. This is very different from the contention that although a binding order was given it was, without legal excuse, counter-

manded, thus admitting a right of action in the plaintiff but denying its right to recover the contract price. The issues tendered by the defendants show clearly that such was not their contention. It is not improper to say that there is no evidence to sustain the suggestion of a countermand of the order. The letter of October 10th falls far short of a countermand; it was at most a request to hold the order until they heard further from them. The plaintiff's answer that it would "hold for a period" put the defendants upon notice that it was not construed as a countermand. The defendants, however, insist that, conceding they are wrong in this position, the contract being executory, the plaintiff cannot sue for the price. That it is entitled to recover damages for the breach of the contract, such damages being the difference between the contract price and the market value of the machine; that this is especially the measure of the plaintiff's recovery in this action, because the title to the machine was not to pass by delivery but to remain in the plaintiff until paid for. The defendants insist that they were entitled to have the third issue tendered by them submitted, so that they could introduce testimony to reduce the plaintiff's recovery by showing the market value of the machine, which should be deducted from the contract price. That after the refusal to submit that issue they were cut off from introducing such testimony. The decision of the question thus raised depends upon whether the plaintiff's exclusive remedy is an action for damages, or whether it may elect to sue for the contract price, or retain the machine and sue for the difference between the contract price and its market value, or adopt another alternative by selling the machine and suing for the difference between the price thus obtained and the contract price. It must be conceded that the authorities are conflicting. In 24 Am. and Eng. Ency., 1118, 1119, both views are stated and the decided cases sustaining them given An ex-

amination of many of the cases sustains the author, saying that "When title has not passed and the contract is still executory it is usually held that the remedy by an action for damages is exclusive and that an action for the agreed price cannot be maintained. There is authority, however, for the view that the vendor may elect either to sue for damages or to treat the goods as the property of the vendee, notwithstanding a distinct refusal to accept them, and sue upon a contract for the whole contract price; * * * but this rule is frequently confined to cases where the contract calls for goods to be manufactured especially for the vendee." He says that there is much confusion upon the subject, even among cases from the same jurisdiction. He cites no case, nor do we find any in our reports, directly deciding the question. We are therefore driven to the necessity of adopting that rule which seems most consonant with "the reason of the thing" and the upholding of contractual duties and rights. When one has, without valid excuse, broken his contract the courts will not incline to permit him to prescribe the rights of the innocent party. In either view, the law looks to making the plaintiff whole and securing to him his rights under the contract. The difference is rather in the method of working it out. Shall the manufacturer of the machine who, as the jury have found, has performed its part of the contract, be compelled to either send an agent to Louisburg and sell the machine manufactured for the special use and to meet the wants of the defendants, or to re-ship it to the place of manufacture before he can sue? Is it not more reasonable and just to require the party who is in default to make good his obligation and protect himself by selling the machine if he does not want it? If the vendor is required to sell or otherwise show the market value he is put to trouble and expense, and subjected to the sometimes uncertain verdict of the jury as to whether he has made the best sale or secured the best

price possible, or exercised good judgment in handling the property. The case which we find nearest analagous to ours is *White v. Solomon,* 164 Mass., 516, 30 L. R. A., 537. The defendant gave an order for a manikin to be delivered and for which he was to pay a part cash and the balance in installments. Title was retained by the vendor until the whole amount was paid. The terms of the contract were strikingly like the one made by the defendants. *Mr. Justice Holmes* says: "The main question is whether the Judge who tried the case ought to have ruled that the plaintiffs were not entitled to recover the price of the article in question, but must offer evidence to the Court upon the question of damages for the alleged breach of said contract. A majority of the Court are of the opinion that this ruling was properly refused. We assume in favor of the defendant, but without deciding that the title to the manikin did not pass by delivery at the express office, but that assumption does not dispose of the case. In an ordinary contract of sale the payment and the transfer of the goods are to be concurrent acts, and if the buyer refuses to accept the goods, even wrongfully, he cannot be sued for the price because the event on which he undertook to pay the price has not happened; and although the fact that it has not happened is due to his own wrong, still he has not promised to pay the price in the present situation, but must be sued for his breach of contract in preventing the event on which the price would be due from coming to pass. The damage for such a breach necessarily would be diminished by the fact that the vendor still had the title to the goods. But in the case at bar the buyer has said, in terms, that although the title does not pass by the delivery to the express company, if it does not, delivery shall be the whole consideration for an immediate debt (partly *solvendum in futuro*) of the whole value of the manikin, and that the passing of the title shall become as a future advantage to him when he has paid the

whole. The words "in consideration of the delivery" are not accidental or insignificant. The contract is carefully drawn so far as to make clear that the vendors intend to reserve unusual advantages and to impose unusual burdens. We are not to construe equities into the contract, but to carry it out as the parties were content to make it. If a man is willing to contract that he shall be liable for the whole value of a chattel before the title passes, there is nothing to prevent his doing so and thereby binding himself to pay the whole sum. * * * When, as here, all the conditions have been complied with, the performance of which by the terms of the contract entitles the vendors to the whole sum, if the vendors afterwards have not either broken the contract or done any act diminishing the rights given them in express words, the buyer cannot by an act of his own repudiating the title, gain a right of recoupment, or otherwise diminish his obligation to pay the whole sum which he has promised."

It will be noted that in the order given in this case following the direction to ship the machine, are the words, "In consideration of the above," that is, the *shipment.* We can see nothing to distinguish our case from the principles announced by this very able Court. We have quoted the opinion at length because it meets and disposes of the question before us. The defendant does not in his answer raise any issue the finding of which would diminish the recovery. The jury having found that they gave an unconditional order, and the plaintiff having complied with it, we can see no good reason why it may not recover the contract price. The judgment must be affirmed.

Affirmed.