NOVELTY ADVERTISING COMPANY v. THE FARMERS MUTUAL TOBACCO WAREHOUSE 'COMPANY.

(Filed 3 October, 1923.)

1. **Contracts—Vendor and Purchaser—Especial Goods—Breach—Measure of Damages.**

Where an executory contract for the sale of goods peculiar to the seller's business and not available for sale by the vendor to its general trade, in this case art calendars with the purchaser's name printed thereon, with a stipulation in the contract against countermand, and the goods are not presently in existence, but thereafter to be especially manufactured, the seller, upon being notified by the purchaser, in breach of his contract, that he would not accept the goods, may not continue their manufacture and thus increase the purchaser's damages; and the measure thereof is the cost incurred by the seller up to the time he received the notification, together with the profits he would have made had the contract not been breached.

2. **Same—Evidence—Instructions—Question for Jury—Appeal and Error.**

Where a purchaser has breached his executory contract for the manufacture of goods made especially for him, before their completion, the question of damages is for the jury upon the evidence thereof, and a peremptory instruction from the court that they award the plaintiff the full contract price is reversible error.

APPEAL by defendant from *Kerr, J.,* at June Term, 1923, of EDGE-COMBE.

Civil action to recover damages for an alleged breach of contract.

On 8 January, 1920, plaintiff contracted with the defendant to print certain calendars, containing advertising matter serviceable only to the defendant, and to ship the same from plaintiff's establishment in Coshocton, Ohio, to the defendant in Rocky Mount, N. C., on or about 1 December, 1920. The amount to be paid for said work was $408.75. The contract contained the following stipulation: "Advertising specialties are made to order and countermands cannot be recognized."

On 7 December, 1920, defendant wired and wrote plaintiff not to proceed with calendar order, as they were undecided as to their plans for the coming year. In reply to this, plaintiff wrote that upon receipt of $110 to cover expenses already incurred, the order would be canceled, but that unless satisfactory adjustment was effected by 15 December, shipment would be made as quickly as possible thereafter. Receiving no answer, plaintiff wired the defendant on 14 December: "We must have assurance that you will mail check promptly for expenses already incurred, or will print like copy submitted, Thursday, 16 December, and express as soon as finished. It is up to you." On 16 December, 1920, defendant wrote the plaintiff as follows: "In reply to your telegram regarding expenses already incurred by you in the printing of our job. Kindly advise by return mail what the expenses are. Up to the present time, we were under the impression that our present manager would continue in force, but now find that this will not be the case; thus there is no need of the completion of the job. We have already written you, advising you to discontinue order. However, if you will send us the bill of expense up to now, we will give it consideration."

On 20 December, 1920, plaintiff informed the defendant that the calendars had been finished and were being shipped.

Defendant refused to accept shipment when it reached Rocky Mount.

His Honor instructed the jury that plaintiff was entitled to recover the full contract price. Verdict and judgment accordingly. Defendant appealed.

*J. P. Bunn and F. S. Spruill, Jr., for plaintiff.*
*Battle & Winslow for defendant.*

STACY, J., after stating the case: The decisions in this jurisdiction are to the effect that when an executory contract for the sale of goods, not presently in existence and ready for delivery, but to be thereafter manufactured, is rescinded before the work is completed, the vendor will not be allowed to increase his damages by continuing to manufacture the goods after notice of rescission, but his damages in such cases are to be measured as of the time of the breach of the contract by the vendee. *Clothing Co. v. Stadiem,* 149 N. C., 6; *Heiser v. Mears,* 120 N. C., 443. The theory upon which this conclusion is reached is not that the buyer or the party in default has a right to pay damages as an alternative performance of his contractual obligation, but rather upon the theory that it is the duty of the seller to do nothing, after notice of rescission, to increase his damages. *Advertising Co. v. Wilson,* 186 Mo. App., 492; 172 S. W., 394; *Catalogue Co. v. Foundry Co.,* 97 S. W., 231; *International Text-Book v. Jones,* 166 Mich., 86.

In *Mfg. Co. v. Cutlery Co.,* 127 S. W., 666, the power as distinguished from the right of a party to repudiate an executory contract, in the face of a stipulation against cancellation, is stated as follows: "One party to an executory contract has the power to repudiate it, and the remedy of the other party is an action for damages caused by the breach of the contract. He cannot thereafter himself perform and recover on the contract. And a contracting party who has certain things to do under his contract has no right to proceed to execute it after he has been notified that the other party will not stand by the contract, and when he receives notice from the other party repudiating the contract, he is not justified in allowing anything further to be done." See, also, Bishop on Contracts, secs. 837 and 841.

The different methods employed and used by the courts in working out the rights of the parties under such circumstances have not been uniform; and this has resulted in a sharp conflict of authorities elsewhere on the subject. *Hart-Parr Co. v. Finley,* 31 N. Dak., 130; Ann. Cas. 1917 E, 706, and note; Page on Contracts (6th Ed.), sec. 3224. For example, in several jurisdictions it is held that where the contract is for the sale of a commodity not in existence at the time and which the seller is thereafter to manufacture, or put in a condition to be delivered (especially if it be of a kind different from that ordinarily made by the seller), upon repudiation by the purchaser, the contract is to be considered as one for work and labor, and not one of sale. *Flynn v. Dougherty,* 91 Cal., 669; *Atwater v. Hough,* 29 Conn., 508; *Goddard v. Binney,* 115 Mass., 450; *Turner v. Mason,* 65 Mich., 662; *Bennett v. Nye,* 4 Greene (Ia.), 410; *Bagby v. Walker,* 78 Md., 239; *Deal v. Maxwell,* 51 N. Y., 652; *Mattison v. Wescott,* 13 Vt., 258.

When a party breaches his contract, without any valid excuse, the courts are not inclined to permit him to prescribe the rights of the innocent party, but their chief concern is in making the plaintiff whole and securing to him his rights under the contract. *Register Co. v. Hill,* 136 N. C., 277; *Smith v. Lumber Co.,* 142 N. C., 26. Nevertheless, we think it is more in keeping with a just regard for the rights of both parties to hold that when a buyer countermands an order for goods before they have been manufactured and at a time when the seller can stop the work and thus mitigate his damages, the vendor should not be allowed to proceed with the work so as to aggravate the damages and recover the contract price upon the theory of full performance. *Butler v. Butler,* 77 N. Y., 472; *Danforth v. Walker,* 37 Vt., 239; *Fireworks Co. v. Polites,* 130 Pa. St., 536; *Collins v. Dalaporte,* 115 Mass., 159; Elliot on Contracts, Vol. 3, sec. 2035; 13 C. J., 655; *Scale Co. v. Beed,* 52 Iowa, 307.

In 6 R. C. L., 1029, this rule is stated as follows: "While a contract is executory a party has the power to stop performance on the other side by an explicit direction to that effect, subjecting himself to such damages as will compensate the other party for being stopped in the performance on his part at that stage in the execution of the contract. The party thus forbidden cannot afterwards go on, and thereby increase the damages, and then recover such damages from the other party. The legal right of either party to violate, abandon, or renounce his contract, on the usual terms of compensation to the other for the damages which the law recognizes and allows—subject to the jurisdiction of equity to decree specific performance in proper cases—is universally recognized and acted upon."

Applying these principles to the facts of the instant case, we think the plaintiff's recovery should be limited to such damages as were sustained prior to the receipt of the defendant's letter of 16 December, 1920. This letter contained, for the first time in the correspondence between the parties, what amounted to a definite repudiation of the contract. If the work had not been completed at that time, the plaintiff would only be entitled to recover an amount sufficient to compensate it for the labor expended and expense incurred in the part performance of the contract, prior to its repudiation, plus the profit that would have accrued had full performance not been prevented by the defendant. *Catalogue Co. v. Foundry Co., supra.* While the difference between the contract price and the amount of damages sustained up to the receipt of the defendant's letter of renunciation may have been slight, yet this was a question for the jury, and we think his Honor erred in his peremptory instruction.

New trial.