## ATALAH v. WILSON LEWITH MACHINERY CORP., CHARLOTTE, N. C.

### No. 6502.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 18, 1952.

Decided Dec. 10, 1952.

O. W. Clayton, Charlotte, N. C. (Clayton & Sanders, Charlotte, N. C., on brief), for appellant.

Wendell R. Wilmoth and Arthur Goodman, Charlotte, N. C. (Goodman & Goodman, Charlotte, N. C., and Harkey & Wilmoth, Charlotte, N. C., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This action for breach of contract for sale was brought by the buyer against the seller of certain mill machinery and was tried by the District Judge without a jury. The buyer claimed damages in the sum of $13,000, including the return of a down payment of $10,000 made by him on account of the total purchase price of $50,-000. The seller denied that it had broken the contract and set up a counterclaim for damages in the sum of $28,000 for breach

of contract by the buyer. The judge found that the buyer and not the seller had broken the contract and that the seller had suffered damages in the sum of $12,000 and judgment for this amount was entered upon the counterclaim.

This appeal involves the contentions of the buyer: (1) that the contract was broken by the seller, and (2) that in any event there is no evidence to support the finding that the seller suffered damages in the sum of $12,000 for the non-performance of the contract.

On September 22, 1949 Abraham Atalah entered into a written contract to purchase from Wilson Lewith Machinery Corp. the machinery in its plant at Monroe, N. C., packed for export, for the sum of $50,000, of which $10,000 was paid at the signing of the agreement, $20,000 additional was to be paid when the packing of the cards and pickers was completed by the seller and inspected by the buyer, and the balance of $20,000 was to be paid as soon as the remainder of the machinery was packed and inspected. The machinery corporation on its part agreed to pack all the machinery properly, cleaned and greased, using waterproof paper for ocean export, and specially agreed to remove and seal the card flats in watertight metal containers and place them in wooden boxes.

Shortly thereafter the corporation proceeded to dismantle the plant and to pack and crate the cards and pickers. By October 4, 1949 the cards and pickers were packed ready for inspection, and the buyer was notified; but he attempted no inspection until January 23, 1950. In the meantime, the seller who desired to remove the crated machinery to make room for the packing of the remainder, requested the buyer from time to time to furnish shipping directions, but failed to get them.

Finally, on January 23, 1950, Atalah came to the office of the corporation in Charlotte and in the afternoon the parties went to Monroe and three or four crates were opened for inspection. Atalah complained that the card flats were not packed in watertight metal containers, that the larger boxes were insufficiently braced to withstand the voyage, and that the machinery was improperly greased. He testified that he came to Charlotte prepared to pay the second installment of $20,000 on the purchase price but found the crates which were inspected in the afternoon of January 23rd to be improperly packed, and that on the following day, when he desired to resume the inspection, permission was denied him.

The District Judge found, however, that the packing was properly done and that there was no breach of contract on the part of the seller and that the real reason that the contract was not performed was the unwillingness or the financial inability of the purchaser to carry it through to completion. This finding is supported by testimony that the buyer after his arrival in North Carolina told representatives of the mill that he did not have the money to pay the balance of the purchase price and requested them to give him some of the machinery in consideration of the down payment of $10,000 which he had made. Since there is abundant testimony to support this finding, the conclusions of the District Court on this point must be sustained.

The record in the case, however, fails to make clear how the damages of $12,000 awarded to the seller on its counterclaim were computed; and the appellee has suggested that on this point the case be remanded for further proceedings. We think this is the proper course to be followed. The District Court in its opinion refers to Heiser v. Mears, 120 N.C. 443, 27 S.E. 117, where the Supreme Court of North Carolina pointed out the remedies open to a seller of specific articles when the purchaser refuses compliance with the contract of sale. The court said, 120 N.C. at page 444, 27 S.E. at page 118:

"In a contract for the sale of specific articles, then in existence and ready for delivery, and the purchaser refuses compliance, the seller has three remedies, at his option: (1) To treat the property as his own, and sue for damages; (2) as the property of the buyer, and sue for the price; (3) as

the property of the buyer, and to resell it for him, and sue for the difference between the contract price and that obtained on resale."

The District Judge assuming that the mill had elected to pursue the first of these remedies in this case rendered a verdict of $12,000 in its favor. We are unable, however, to determine from the record in its present state whether the mill has elected to pursue this remedy as to all of the property covered by the contract, and there are other uncertainties which must be cleared up before a calculation of the damages, if any, can be confidently made.

The record contains some evidence as to the value of the machinery at the time of the breach but no specific finding on the point. The record also shows that some portion of the machinery was resold by the mill but neither the quantity sold nor the price paid by the purchaser is given. Furthermore the expense to which the mill would have been put if it had packed all the machinery covered by the contract, and the saving which it has made in this particular, have not been determined; nor has the cost, if any, of unpacking the cards and pickers been ascertained. The cost of uncrating the cards and pickers alone was stated to be approximately $2,000, but even this item has not been stated with precision. Moreover, the credit to be accorded to the buyer on account of the down payment of $10,000 has not been fixed.

By reason of the uncertainties involved in this situation, we are unable to decide what measure of damages should be applied under the rules laid down by the Supreme Court of North Carolina for the breach of contract by the buyer; and we can only refer to the decisions of that court which, among others, may be found to be pertinent upon the retrial of the case. See Heiser v. Mears, supra; Novelty Advertising Co. v. Farmers' Mutual Tobacco Warehouse Co., 186 N.C. 197, 119 S.E. 196; Troitino v. Goodman, 225 N.C. 406, 35 S.E.2d 277.

Reference may also be made to the rule of law which pertains to the right of a seller who sues for breach of contract to retain a down payment made by the purchaser who subsequently defaults. On this point see 3 Williston on Sales, § 599m; Thach v. Durham, 120 Colo. 253, 208 P.2d 1159, and the annotation of the last mentioned case in 11 A.L.R.2d 690.

 The measure of damages suffered by the appellee will be affected in the present case by the fact that under the contract the purchase price of $50,000 covered not only the price of the machinery but the expense of the packing for export which the seller agreed to do. Hence in determining the damages the cost of packing, part of which was done and part of which was not undertaken, must be ascertained as well as the cost of unpacking the cards and pickers if this work was actually performed.

The judgment of the court will be affirmed in part and reversed in part, and the case remanded for further proceedings in accordance with this opinion.

Affirmed in part.

Reversed in part.